J-A21030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TFP LIMITED | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MENACHEM M. GANSBERG | : | |
| | : | |
| Appellant | : | No. 63 MDA 2025 |

Appeal from the Judgment Entered February 25, 2025
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2020-CV-02964

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:          **FILED: OCTOBER 16, 2025**

Menachem M. Gansberg ("Gansberg") appeals from the judgment imposed, following a non-jury trial, against him and in favor of TFP Limited ("Landlord").  We affirm.

This matter arises from a dispute over the enforcement of a commercial lease guaranty ("Guaranty").  Landlord owns commercial property in Wilkes-Barre, Luzerne County, Pennsylvania.  In February 2018, TFP Limited entered into a lease (the "Lease") with Viva Hospitality, Inc. ("Tenant") for Suite 3 (the "Premises") of the property.  Notably, the Lease contained a warrant of attorney that authorized Landlord to confess judgment against Tenant upon default.  Under this clause, if Tenant defaulted on the payment of rent, Tenant "irrevocably authorize[d] and empower[ed]" any attorney or court prothonotary

_____

[*] Former Justice specially assigned to the Superior Court.

to appear for Tenant, with or without complaint filed; and in . . . suits or actions to confess judgment . . . against Tenant . . . , in favor of Landlord, for all or any part of . . . rental and/or . . . other sums, including [damages.]

Trial Court Opinion, 3/7/25, at 8.

The Lease also required personal guaranties. Accordingly, Gansberg and Brittany Holly ("Holly") agreed to be guarantors and executed a two-page Guaranty, which provided, *inter alia*, that they "guarantee[d] the payment and performance of all liabilities, obligations and duties (including, but not limited to, payment of rent) imposed upon Tenant under the terms of the Lease, as if [they] had executed the Lease as Tenant thereunder." ***Id***. at 7.

The Guaranty also provided that the guarantors waived notice of "all other notices . . . in connection with the liabilities, obligations and duties guaranteed . . . , including notices of default by Tenant under the Lease, and waive[d] diligence, presentment and suit on the part of Landlord in the enforcement of any liability, obligation or duty guaranteed . . . ." ***Id***.

Due to geographical constraints, Holly and Gansberg executed the Guaranty "in counterpart," each separately signing a copy. ***Id***. at 4. Both copies of the signed Guaranty were attached as exhibits to the Lease. With respect to the Guaranty signed by Holly, the second page began with an expiration clause, which stated in full:

Notwithstanding anything to the contrary contained herein, so long as Tenant is not in default of the terms and conditions of the Lease beyond any applicable notice and cure period, the terms and conditions of this Guaranty shall be of no force and effect

- 2 -

following the expiration of the thirtieth month[1] of the initial term
. . ..

*Id*. at 5 (unnecessary capitalization omitted).

The trial court noted, however, that the expiration clause in Gansberg's copy appeared to be different. *See id*. The version of the Lease signed by Gansberg did not reproduce the expiration clause in its entirety. Instead, his copy began mid-sentence with a lower-case "t" in the word "the," thereby omitting the first two lines of the clause as follows:

> the terms and conditions of this Guaranty shall be of no force and effect following the expiration of the thirtieth month of the initial term . . .

*Id*. (unnecessary capitalization omitted).

The Lease commenced on February 1, 2018. Within the first thirty months, Tenant defaulted. On July 19, 2019, Landlord filed a complaint to confess judgment. On February 21, 2020, the court entered a confessed judgment against Tenant pursuant to the Lease's confession of judgment clause in the amount of $34,506.45. On March 28, 2023, Landlord filed a motion to reassess damages. On May 15, 2023, the court granted Landlord's motion to reassess damages against Tenant in the amount of $109,722.34, plus interest, attorney's fees, and costs.

_____

[1] The initial version of the Guaranty provided a term of five years before the Guaranty expired. "However, upon [Gansberg's] request, that term was amended to reflect expiration . . . after thirty . . . months." Trial Court Opinion, 3/7/25, at 5.

- 3 -

On February 28, 2020, before the expiration of the thirtieth month of the Lease, TFP Limited filed the underlying lawsuit against Gansberg, seeking recovery from him under the Guaranty. This matter proceeded to a non-jury trial in April 2024. Landlord presented the testimony of its trustee general partner, Robert Tamburro ("Tamburro") who explained that Gansberg had direct knowledge and involvement in the language contained within the Lease agreement and the Guaranty. *See* N.T., 4/16/24, at 15-23. Landlord also introduced emails exchanged between Tamburro and Gansberg. *See id*. On the second page of a January 2017 email, Gansberg acknowledged a separately attached draft of the Guaranty, which included an expiration clause identical to the one in Holly's Guaranty. *See id*. at 17-20. According to Landlord, this evidence confirmed that the parties intended Gansberg's Guaranty to be coextensive with Holly's, and not to expire earlier. Tamburro also testified that omission of the "notwithstanding" language from Gansberg's Guaranty resulted from a printing error. *See id*. at 62.

Gansberg, however, maintained that his executed copy of the Guaranty — attached to the Lease and included in the pleadings — did not contain the additional language, beginning with the word "Notwithstanding," that appeared in Holly's Guaranty. *See* N.T., 4/16/24, at 6; *see also* Trial Court Opinion at 5. Accordingly, Gansberg argued, the language of his Guaranty stated only that "the terms and conditions of this Guaranty shall be of no force and effect following the expiration of the thirtieth month of the initial term . .

.." Trial Court Opinion at 5. Gansberg maintained that because TFP Limited did not obtain the confessed judgment until after the thirty–month period expired, his contractual obligations had lapsed, rendering the Guaranty expired and unenforceable. **See** N.T., 4/16/24, at 7, 71, 83, 97.

The trial court concluded that Gansberg's Guaranty was identical in substance to Holly's "fully legible executed copy[,] despite a printing error on the signatory page that contained [Gansberg's] signature[, which began] with [an illogical] sentence with lowercase letters, and [a] nonconforming margin of clear space at the top of the page[.]" Trial Court Opinion, 3/7/25, at 5-6. The trial court thus found in favor of Landlord and against Gansberg. Gansberg filed post-trial motions, which the court denied. The trial court entered a judgment against Gansberg in the amount of $109,722.34, plus interest, fees, and costs. Thereafter, Gansberg filed a timely notice of appeal, and Gansberg filed a court-ordered Pa.R.A.P. 1925 statement of errors complained of on appeal.

Gansberg lists twelve issues throughout the argument section in his appellate brief, some of which are interrelated.[2] **See** Gansberg's Brief at 18-

---

[2] We note with disapproval that Gansberg's Rule 1925(b) statement, as well as his appellate brief, fail to clearly articulate the legal issues he seeks to raise on appeal. **See** Pa.R.A.P. 1925(b)(4)(ii) (requiring that a concise statement "state the errors complained of with sufficient detail to identify the issues to be addressed in the appeal"), 2119(a) (requiring argument to set forth "the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"); **see also** Trial Court Opinion, 3/7/25, *(Footnote Continued Next Page)*

35. For clarity and ease of discussion, we identify the following five general issues for our review:

> [1.] Contracts are to be given their plain meaning.
>
> [2.] [Gansberg's G]uaranty is clear as to expiration.
>
> [3.] The use of a confessed judgment as evidence is improper.
>
> [4.] Confessed judgment is not evidence of debt.
>
> [5.] The monetary judgment is improper because a remedy was selected and the [L]ease language prohibits further remedies.

*Id*. at 18, 20-22 (issues reordered for ease of disposition).

_____

at 3 (suggesting Gansberg's Rule 1925(b) statement "failed to list[] concisely the legal issues").

The section in Gansberg's brief entitled "Statement of the Questions Involved[,]" consists solely of a recitation of this Court's standard of review. *See* Gansberg's Brief at 3-4; *see also* Pa.R.A.P. 2111(a)(4) (requiring that the appellant's brief include a "statement of the questions involved"). Additionally, several portions of Gansberg's argument are difficult to follow. For example, under the heading, "Prevailing Party Liability," he contends that by the terms of the Guaranty agreement, his Guaranty expired before Landlord obtained the confessed judgment against Tenant. Gansberg's Brief at 31. He then immediately avers, "The judgment is exclusively a non-leasehold term as distinguished by 'not as damages[,'] a term detailing the relationship between only the Lessee and Lessor as to additional actions taken and as such not part of lease ***damages*** is excluded." *Id*. (emphasis in original). The meaning of this statement is not clear, and its connection to the heading, "Prevailing Party Liability, is not apparent.

Notwithstanding these deficiencies, the trial court was able to discern the relevant issues and addressed them in its opinion. Similarly, we decline to find waiver, and we will address the merits of Gansberg's issues as we can discern them.

In his first and second issues on appeal, Gansberg argues that the Guaranty expired prior to Landlord's obtaining the confessed judgment against Tenant, thereby extinguishing his liability. Gansberg avers that the trial court misinterpreted the Guaranty by reading terms more broadly than their plain language allows. We apply the following standard and scope of review when considering challenges to a non-jury verdict:

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review, the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

***Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare***, 299 A.3d 937, 956 (Pa. Super. 2023) (citation omitted). It is well settled:

> It is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact. In a non-jury trial, the factfinder is free to believe all, part, or none of the evidence, and [this] Court will not disturb the trial court's credibility determinations. . . .

***Viall v. Garvin***, 318 A.3d 905, 911 (Pa. Super. 2024) (citation omitted).

> [T]he interpretation of a contract is a question of law, [thus] our standard of review is plenary. Further,
>
>> [w]hen interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly.

> When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent. . . . Where the language of the contract is ambiguous, the provision is to be construed against the drafter. . . .

***Riverview Carpet & Flooring, Inc.***, 299 A.3d at 983–84 (citations and quotation marks omitted).

Gansberg argues that the terms of his Guaranty were distinct from Holly's and that the trial court should have interpreted his expiration clause solely on the language appearing on his copy. Gansberg contends that the Guaranty expired thirty months after commencement of the Lease, and before Landlord obtained a confession of judgment against Tenant, thereby extinguishing his liability.[3]

The trial court rejected Gansberg's argument and found that the language executed by both guarantors was identical, despite the printing error on Gansberg's signature page. In reaching this conclusion, the trial court considered: (1) the testimony regarding the printing error; (2) the "fully legible" copy signed by Holly; (3) the "illogical [sentence beginning] with lowercase letters" on Gansberg's copy; and (4) the "nonconforming margin of clear space at the top of the page." Trial Court Opinion, 3/7/25, at 4-6. The

---

[3] Gansberg also cites general principles of contract interpretation regarding ambiguous terms. ***See*** Gansberg's Brief at 18–20. However, he does not identify any specific term in the Guaranty that is ambiguous, nor does he argue how any term could reasonably bear more than one meaning. Instead, Gansberg alleges that the trial court attempted to "rewrit[e]" the Guaranty. ***Id***. at 20. We understand this argument, however, to be that the court added a term, rather than asserting contractual ambiguity.

trial court found that the omission did not alter the substance or enforceability of the Guaranty against Gansberg. *See id*. The trial court reasoned:

> The contract is not ambiguous. It is clear that should the Tenant default under the terms of the Lease, within the first thirty months of the initial Lease term, the signatory [Gansberg] is responsible for all payment, performance of all liabilities, obligations, and duties which are imposed upon the Tenant under the terms of the Lease. . . .
>
> The contract clearly provides for the recovery of Landlord,. . . if the Tenant defaults under the terms of the Lease within the first thirty . . . months of the initial Lease term. That occurred here, and the Landlord exercised those rights within those thirty . . . months wherein the default occurred. . . .

Trial Court Opinion, 3/7/25, at 5-7 (citations and unnecessary capitalization omitted).

After careful review, we determine the record, when viewed in the light most favorable to Landlord, supports the trial court's factual findings. *See Riverview Carpet & Flooring, Inc*. 299 A.3d at 956. On appeal, Gansberg does not address, and therefore does not dispute, the trial court's reasoning regarding the printing error, including the nonconforming margins and the illogical start of a sentence with a lowercase letter. Gansberg also fails to address Landlord's evidence at trial, including emails between him and Tamburro showing that the expiration clause in his Guaranty matched the language in Holly's Guaranty, and Tamburro's testimony confirming the parties' intent that the Guaranty terms were identical. *See Viall*, 318 A.3d at 911.

Additionally, Gansberg does not dispute the trial court's rejection of his argument regarding the Guaranty's enforceability.  On appeal, he contends only that "his Guaranty expire[d] at the time and prior to entry of judgment." Gansberg's Brief at 31.  The trial court found this reading was illogical and would render many guaranties unenforceable.  ***See Riverview Carpet & Flooring, Inc.***, 299 A.3d at 983–84.  In the absence of any persuasive argument, Gansberg's first and second issues lack merit.

In Gansberg's third and fourth issues, he argues that the trial court erred in accepting Landlord's confessed judgment against Tenant as competent evidence of a debt against him as guarantor.  As previously stated, when the terms of a contract are clear and unambiguous, we ascertain the intent of the parties from the document itself.  ***See id***.  Courts give the language of a contract its commonly accepted and plain meaning.  ***See id***.

A confessed judgment is a valid court record and "has all the qualities of a judgment on a verdict."  ***Neducsin v. Caplan***, 121 A.3d 498, 505 (Pa. Super. 2015).

Gansberg argues that the trial court erred in accepting the confessed judgment entered against Tenant as evidence of his liability.  First, Gansberg maintains that Landlord's confessed judgment against Tenant was invalid, arguing it was "entered without notice to the Defendant [*sic*]"[4] and thus precluded the "ability to dispute" it.  Gansberg's Brief at 20.  Next, Gansberg

_____

[4] It is not clear whether Gansberg's reference to the "Defendant" means him or Tenant.

- 10 -

maintains that a confessed judgment is not itself proof of a debt enforceable against a guarantor. He contends that the court's reliance on such a judgment deprived him of due process.

The trial court reasoned:

Considering the [confessed] judgment is a liability that arose from the Lease in which [Gansberg] guaranteed, [he] is responsible for the same.

. . . While [Gansberg] seemingly attempts to assert an issue stemming from evidence, the fact remains that the confession of judgment was a liability guaranteed contractually by [him].

\* \* \* \*

. . . The unambiguous contract signed by . . . Gansberg guaranteed the underlying Lease . . .. The record leaves little doubt that the relief . . . sought is the direct liability that was established to those of the Tenant . . . from [its] Lease with [Landlord].

Trial Court Opinion, 3/7/25, at 9.

After careful review, we conclude the record supports the trial court's findings of fact and application of the law. *See Riverview Carpet & Flooring, Inc.*, 299 A.3d at 956. To the extent Gansberg now attempts to attack the validity of the prior confessed judgment against Tenant, on grounds of notice or otherwise, we cannot agree or grant relief. Instead, the confessed judgment is a valid record of court and bears all the qualities of a judgment on a verdict.[5] *See Neducsin*, 121 A.3d at 505-06. On this basis, we further

_____

[5] In any event, Pennsylvania Rule of Civil Procedure 2952(b) "expressly authorizes . . . a party to file a complaint in confession of judgment without

*(Footnote Continued Next Page)*

- 11 -

determine that the trial court correctly concluded that TFP Limited sought to enforce the direct liability of Tenant, which Gansberg, as guarantor, had contractually assumed. The Guaranty unambiguously obligated Gansberg to guarantee all liabilities of Tenant under the Lease, including rent and other obligations. *See Riverview Carpet & Flooring, Inc*. 299 A.3d at 983-84; *see also Neducsin*, 121 A.3d at 505. The confessed judgment arising from the Lease constituted a liability enforceable against Gansberg. *See Neducsin*, 121 A.3d at 505. Thus, Gansberg's third and fourth issues fail.

With respect to Gansberg's fifth issue, we first provide the following context. Paragraph 20.1(h) of the Lease between Landlord and Tenant provided in relevant part: "Upon the occurrence of any . . . default, Landlord shall have the option to pursue [one] of the following alternate remedies . . . without any further notice or demand: (a) enter upon and take possession of the premises . . . .." Trial Court Opinion, 3/7/25, at 11. The Lease also provided, however, that "[p]ursuit of any of the above remedies shall not preclude pursuit of any other remedies prescribed in other sections of this Lease and any other remedies provided by law or in equity." *Id*.

After Tenant defaulted under the Lease, Landlord obtained a court order for repossession of the Premises and retook possession. On appeal, Gansberg argues that this election to repossess barred Landlord from recovering

_____

either a notice to defend or a notice to plead, and no responsive pleading is required." *Neducsin*, 121 A.3d at 505 (*citing* Pa.R.C.P. 2952(b)). Notice and the opportunity to challenge arise pursuant to a petition to strike or open under Rule 2959, satisfying due process. *See Neducsin*, 121 A.3d at 506.

monetary damages and therefore it could not properly obtain the confessed judgment. The trial court suggests waiver of this issue on the ground that Gansberg failed to raise it during trial. *See* Trial Court Opinion, 3/7/25, at 10.

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "A party 'may not, at the post-trial motion stage, raise a new theory which was not raised during trial.'" *E.S. Mgmt. v. Yingkai Gao*, 176 A.3d 859, 864 (Pa. Super. 2017). Here, Gansberg did not raise this issue at trial nor present evidence in support of it. Instead, he only raised it in his post-trial motions. Thus, Gansberg waived his fifth claim. *See* Pa.R.A.P. 302(a); *see also E.S. Mgmt.*, 176 A.3d at 864.

Even if preserved, the claim fails. The Lease expressly stated that "[p]ursuit of any of the above remedies shall not preclude pursuit of any other remedies prescribed in other sections of this Lease and any other remedies provided by law or in equity." Trial Court Opinion, 3/7/25, at 11. Thus, we would conclude that the trial court properly held that TFP Limited retained the right to both repossess the property and seek monetary damages. *See Riverview Carpet & Flooring, Inc*. 299 A.3d at 983-84.

For these reasons, none of Gansberg's issues merits relief. Accordingly, we affirm the judgment of $109,722.34, plus interest, fees, and costs, entered in favor of TFP Limited.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/16/2025